**In re Maxine B. BELL, Debtor.**

**Maxine B. Bell, and Edward Sparkman, Trustee, Plaintiffs**

v.

**Parkway Mortgage, Inc., and Stephen Flacco, t/a WHARTON Investments Network, Defendants.**

**Bankruptcy No. 01–14420 KJC. Adversary No. 01–392 KJC.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 9, 2004.

Maxine B. Bell, Philadelphia, PA, for Debtor.

**56**

David A. Scholl, Esquire, Newtown Square, PA, for Debtor/Plaintiffs.

William Miller, Philadelphia, PA, for Trustee.

Alan C. Gershenson, Esquire, Philadelphia, PA, Anthony M. Pugliese, Esquire, Madden, Madden, & Del Duca, Haddonfield, NJ, for Defendants.

## MEMORANDUM OPINION[1]

KEVIN J. CAREY, Bankruptcy Judge.

### A. *Background.*

On May 30, 2001, Maxine B. Bell (the "Debtor") and the chapter 13 trustee Edward Sparkman (together, the "Plaintiffs") commenced this adversary proceeding by filing a complaint against Parkway Mortgage, Inc. ("Parkway") and Stephen Flacco, t/a Wharton Mortgage Investments ("Wharton"). In her complaint, the Debtor claimed that her loan with Parkway, which occurred on June 30, 1999 (the "Loan"), violated the federal Truth in Lending Act and various Pennsylvania consumer protection laws. After trial and briefing by the parties, this Court issued a Memorandum Opinion and Order on April 14, 2004 (the "April 14, 2004 Opinion") which determined the following: (I) the Loan was not subject to the Home Ownership Equity Protection Act, 15 U.S.C. § 1639(a) *et seq.* ("HOEPA"); (ii) the Debtor was entitled to rescind the Loan because she did not receive proper disclosure of her right to rescind the loan transaction; (iii) the Debtor's request to void Parkway's lien against her Property for failure to obtain a valid notary on the mortgage was denied; (iv) the Debtor's claims against Wharton based upon common law fraud and breach of fiduciary

duty were denied; (v) the broker agreement between the Debtor and Wharton violated the Pennsylvania Credit Services Act, 73 P.S. § 2188(c)(2)(the "CSA"), and the Debtor is entitled to damages in the amount of $5,470; (vi) although the Loan transaction was subject to the Pennsylvania Home Improvement Finance Act, 73 P.S. § 500–101 *et seq.*, ("HIFA"), the Debtor is not entitled to any damages based upon improper finance charges, since the Loan was rescinded, and the Debtor failed to assert any legal basis for a breach of warranty claim; (vii) the Debtor is entitled to statutory damages under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, ("TILA"), in the amount of $2,200; and (viii) the Debtor could tender repayment to Parkway through her chapter 13 plan in an amount to be determined at a later hearing.

Presently before the Court are the following two motions that were filed by the Plaintiffs on April 26, 2004:(I) "Plaintiffs' Motion For Reconsideration of Certain Portions Of This Court's Memorandum Opinion and Order of April 14, 2004" (the "Motion For Reconsideration"); and (ii) the "Motion of Plaintiffs and Their Counsel for Attorneys' Fees" (the "Attorney Fee Motion"). Wharton and Parkway oppose the relief requested in the Motion for Reconsideration. Further, Parkway objected to the amount requested in the Attorney Fee Motion.

On May 18, 2004, a hearing was held to consider the motions. Thereafter, the parties filed memoranda of law in support of their respective positions on the Motion For Reconsideration. For the reasons set forth herein, the Motion for Reconsideration will be denied, except for allowance of

---

**1.** This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.P. 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a). This is a core proceeding pursuant to 28 U.S.C. 157(b)(1) and (b)(2)(B), (K) and (O).

additional statutory damages in the amount of $200. Because Debtor's counsel may have incurred additional fees, he may wish to supplement his request for attorney fees. I will give counsel the opportunity to do so and will decide objections to the entire Attorney Fee Motion at the hearing scheduled in accordance with this Memorandum.

### B. *The Motion for Reconsideration.*

 A motion to alter or amend a judgment under Rule 59(e), which is applicable to this proceeding pursuant to Fed. R.Bankr.P. 9023, must be grounded on (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3rd Cir.1995), *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir.1985). Further, parties should not use a motion for reconsideration as an opportunity to relitigate issues the court has already decided. *Smith v. City of Chester,* 155 F.R.D. 95, 97 (E.D.Pa.1994). "Motions for reconsideration should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *Pennsylvania Ins. Guaranty Ass'n v. Trabosh,* 812 F.Supp. 522, 524 (E.D.Pa.1992).

The Motion for Reconsideration requests reconsideration of four issues: (I) whether the Loan was subject to HOEPA; (ii) whether the Debtor is entitled to damages for violations of HIFA and other Pennsylvania consumer protection statutes; (iii) whether the damages awarded to the Debtor for violations of the CSA should be trebled under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1 *et seq.* ("CPL"); and (iv) whether the Debtor's repayment obligation to Parkway should be eliminated in its entirety since Parkway failed to honor the Debtor's original notice of rescission. The Debtor does not argue that there has been an intervening change in law or that she has uncovered new evidence to support her claims. Instead, the Debtor appears to argue that the matter should be reconsidered to correct an error of law or to prevent "manifest injustice."

### (1) *Whether the Loan is subject to HOEPA.*

 The Debtor argues that this Court should reconsider its decision that the Loan was not subject to HOEPA for two reasons. First, the Debtor claims that because this Court determined that the Loan was subject to HIFA, the Court must also determine whether charges prohibited by HIFA must be included in the HOEPA points and fees calculation.[2] Second, the Debtor asks the Court to reconsider her argument that the $251 insurance premium should have been included in the HOEPA Points and Fees Calculation as a "finance charge."

I first note that the Debtor has not offered any new evidence or new arguments regarding the insurance premium charge. I have already considered the Debtor's arguments and my decision on this matter is set forth in detail in the

---

**2.** HOEPA requires lenders to make additional disclosures for certain high-cost mortgages. 15 U.S.C. § 1639. Mortgages subject to the additional disclosure requirements of HOEPA are described in 15 U.S.C. § 1602(aa), and include certain mortgages for which the total "points and fees" payable by the consumer at or before closing will exceed 8% of the total loan amount. 15 U.S.C. § 1602(aa). To determine whether certain charges should be included in the "points and fees" calculation, one must look to the definition of "points and fees" set forth in 12 C.F.R. § 226.32(b)(1) (the "HOEPA Points and Fees Calculation").

April 14, 2004 Opinion. *See Bell v. Parkway Mortgage, Inc. (In re Bell)*, 309 B.R. 139, 152–53 (Bankr.E.D.Pa.2004). Nothing has been offered that merits reconsideration of that decision.

I turn, then, to the Debtor's request that this Court reconsider the HOEPA analysis in light of the determination that the Loan is subject to HIFA. More specifically, the Debtor asks that I re-evaluate the HOEPA Points and Fees Calculation by considering whether certain real estate-related fees are "reasonable" (as required by 12 C.F.R. § 226.4©(7)) if state law prohibits charging such fees on HIFA loans. However, the Debtor has not offered any reason why reconsideration of the HOEPA analysis is necessary to prevent "manifest injustice." If I determine that the Loan is subject to HOEPA, the Debtor would be able to rescind the Loan for failure to receive the HOEPA disclosures (15 U.S.C. § 1635 and § 1639(j)) and to receive statutory damages for a disclosure violation (15 U.S.C. § 1640). I have already determined that the Debtor validly rescinded the Loan and is entitled to receive statutory damages for failure to receive proper disclosure of her right to rescind the loan transaction. *Bell*, 309 B.R. at 155–58, 167–68. Because § 1640(g) limits a Debtor to a single recovery for multiple failures to disclose, the Debtor would not be entitled to additional statutory damages under § 1640(a)(2)(A). Moreover, the Debtor's damages under § 1640(a)(4) will be recognized because the Loan has been rescinded and the Debtor will receive a credit against her repayment amount for all payments that she previously made to Parkway. Accordingly, I discern no valid reason to reconsider the HOEPA analysis set forth in the April 14, 2004 Opinion.

(2) *Whether the Debtor is entitled to damages for violations of HIFA and other Pennsylvania consumer protection statutes?*

Because the Loan is subject to HIFA, the Debtor may assert against the assignee (here, Parkway) any defense that she has to payment for the home improvements. 73 P.S. § 500–208.[3] The Debtor has alleged breach of warranty claims, but has not alleged a legal basis underlying her warranty claim. *Bell*, 309 B.R. at 165. The Motion for Reconsideration does not allege anything new. The Debtor has neither asserted a violation of an express warranty based upon a contract nor has she specifically pled a statutory warranty or implied warranty to allow me to analyze whether such warranty may be applicable to her claims. Therefore, I will not grant her claims for damages based upon the contractor's "breach of warranty" because I have an insufficient legal basis upon which to do so.

The Debtor argues that I applied the case *Steinbrecher v. Mid–Penn Consumer Discount Co.*, 110 B.R. 155 (Bankr.E.D.Pa. 1990) too broadly in deciding that *Steinbrecher* eliminated the Debtor's breach of warranty claims. However, the Debtor is reading the April 14, 2004 Opinion too broadly. I cited to the *Steinbrecher* decision in support of my decision that "no award of actual damages which flow directly or indirectly from the imposition of im-

---

**3.** That section provides, in part, as follows:

No right of action or defense arising out of the transaction which gave rise to the home improvement installment contract which the buyer has against the contractor, and which would be cut off by assignment, shall be cut off by assignment of the contract to any third person whether or not he acquired the contract in good faith and for value unless the assignee gives notice of the assignment to the buyer as provided in this section and within fifteen days of the mailing of such notice receives no written notice of the facts giving rise to the claim or defense of the buyer.

proper finance charges is appropriate" since the Loan was rescinded and the Debtor is no longer responsible for payment of finance charges. *Bell,* 309 B.R. at 165. I did not conclude that *Steinbrecher* applied to the Debtor's "breach of warranty" claims.

■ However, I will consider whether the Debtor is entitled to recover damages under CPL based upon the violations of HIFA. I did not address this issue fully in the April 14, 2004 Opinion, except for a footnote recognizing that other courts have determined a violation of HIFA qualifies as an unfair method of competition or an unfair or deceptive act or practice under the CPL. *Bell,* 309 B.R. at 163, n. 21. Because there is a CPL violation, the Debtor seeks recovery under 73 P.S. § 201–9.2, which provides:

§ 201–9.2 Private actions.

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

■ The deceptive act here was the failure to structure the Loan in accordance with the requirements in HIFA. The Debtor's actual damages flowing from this failure are the increased fees and charges charged in violation of HIFA. Because the Loan has been rescinded, pursuant to 15 U.S.C. § 1635(b), the Debtor "is not liable for any finance or other charge." *See also* 12 C.F.R. § 226.23(d)(1) ("When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void *and the consumer shall not be liable for any amount, including any finance charge.*"(emphasis added)). The Official Staff Commentary further explains that, upon rescission:

> The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees, or fees for a title search or appraisal, whether paid to the creditor, paid directly to a third party, or passed on from the creditor to the third party. It is irrelevant that these amounts may not represent profit to the creditor.... Similarly, the term "any amount" does not apply to any money or property given by the creditor to the consumer; those amounts must be tendered by the consumer to the creditor under § 226.23(d)(3).

Official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I, § 226.23(d)(2). The Debtor is already relieved from paying any of the "illegal" HIFA fees by rescinding the Loan and, therefore, the Debtor has no "actual damages" to recover under 73 P.S. § 201–9.2. In *Armstrong v. Nationwide Mortgage Plan/Trust (In re Armstrong),* 288 B.R. 404 (Bankr.E.D.Pa.2003), the Court similarly determined that there were no actual damages to recover under CPL for a HIFA violation if the loan is being rescind-

ed. *Armstrong*, 288 B.R. at 427. Even so, the *Armstrong* Court concluded that statutory damages in the amount of $100 were warranted under 73 P.S. § 201–9.2 to offset the debtor's repayment requirement. *Id.* The same statutory damages apply here and the Debtor's repayment requirement should be reduced by $100.

(3) *Whether the damages awarded to the Debtor for violation of the CSA should be trebled under CPL?*

In the April 14, 2004 Opinion, I concluded that the Debtor was entitled to damages for violation of the CSA in the amount of $5,470.00. *Bell*, 309 B.R. at 163. The Debtor asks that I reconsider whether these damages should be trebled under 73 P.S. § 201–9.2. Because the interplay between CPL and CSA was not addressed in the April 14, 2004 Opinion, I will reconsider the issue here.

■ The CSA statute specifically provides that a violation of the CSA is a deceptive trade practice under the CPL. 73 P.S. § 2190(a). As discussed in the previous section, § 201–9.2 of CPL permits a Court to award up to three times that amount of actual damages sustained by a borrower. However, consistent with my decision in the April 14, 2004 Opinion and this decision, I again note that because the Loan has been rescinded, the Debtor has no liability for the broker fees and costs. Therefore, the Debtor has no actual damages to treble. The award of $5,470.00 was made pursuant to the language of the CSA which permitted recovery of actual damages "but in no case less than the amount paid by the buyer or borrower to the credit services organization or loan broker." 73 P.S. § 2191. However, as decided with respect to HIFA above, the Debtor is entitled to another statutory damage award of $100 to offset the amount of her repayment obligation.

(4) *Whether the Debtor's repayment obligation to Parkway should be eliminated in its entirety since Parkway failed to honor the Debtor's original notice of rescission?*

■ Finally, the Debtor also requests that this Court reconsider its decision that the Debtor must tender repayment to Parkway, as required by 12 C.F.R. § 226.23(d)(3), through her chapter 13 plan. The Debtor cites to other decisions in this district that eliminated a debtor's repayment obligation under 12 C.F.R. § 226.23(d)(4) due to the lender's failure to honor a debtor's valid notice of rescission. *See Williams v. Gelt Financial Corp.*, 237 B.R. 590, 598–99 (E.D.Pa.1999)(Deciding that the bankruptcy judge did not abuse his discretion by eliminating the debtor's repayment obligation, writing that "whether or not it is equitable to compel the borrower to repay the debt as a condition of voiding the security interest depends on the facts of each case."); *Gill v. Mid–Penn Consumer Discount Co.*, 671 F.Supp. 1021, 1026 (E.D.Pa.1987)(Deciding that the creditor's failure to comply with a valid rescission excused the borrower from repayment). *See also Williams v. BankOne, N.A. (In re Williams)*, 291 B.R. 636, 655 (Bankr.E.D.Pa.2003)(Deciding that the remedy of eliminating a borrower's repayment obligation should be confined to situations in which the creditors have tried to deceive or cheat the borrower).

Thus, while some courts have held that a debtor may be relieved of a repayment obligation based upon a lender's failure to honor a valid notice of rescission, I have already found in this case that Parkway could not tell from the loan documentation that the Debtor did not receive proper notice of her right to rescind. *Bell*, 309 B.R. at 168. Therefore, in accordance with 15 U.S.C. § 1640(a)(2)(A)(ii), I awarded statutory damages in the minimum

amount of $200 for Parkway's failure to honor the Debtor's valid notice of rescission. For the same reason, I do not conclude that Parkway's failure to honor the Debtor's valid notice of rescission within 20 days of receipt should give rise to elimination of the Debtor's entire repayment obligation.[4]

■ Finally, the Debtor also argues that if this Court decides there is a repayment obligation, it should further consider other decisions that have permitted repayment over longer periods of time outside the context of a chapter 13 plan. *See Mayfield v. Vanguard Savings & Loan Assoc.*, 710 F.Supp. 143, 148 (E.D.Pa.1989)(Deciding that the borrower's repayment amount should be $16,113.62, payable in monthly payments of $171, which was the amount of the borrower's monthly payments prior to the two loan refinancings), *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295, 1308 (D.Del.1990)(Deciding that the borrower's repayment obligation should be the value of the siding to the borrower ($11,361.58), payable in monthly payments of $199 (*i.e.*, the same amount of the consumer's monthly payments prior to rescission)).

Regulation Z recognizes a court's authority to modify the procedures for the creditor's response to a rescission and the borrower's tender of her repayment obligation. The court's discretion to modify the rescission procedures was discussed in the legislative history of 15 U.S.C. § 1635(b) as follows:

> The Committee expects that the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the act.

*Williams*, 291 B.R. at 660 *quoting* S.Rep. 96–368, 96th Cong., 1st Sess. 29 (1979), 1979 WL 10375 (Leg.Hist.), *reprinted in* 1980 U.S.C.C.A.N. 236, 264–65. In the April 14, 2004 Opinion, I agreed with Judge Sigmund's analysis in *Williams* and the remedy she fashioned, pursuant to the authority granted in 12 C.F.R. § 226.23(d), requiring the debtor to satisfy her repayment obligation through her chapter 13 plan and granting the lender a judgment in the amount of the repayment obligation. I am still of the view that this remedy harmonizes the interplay between TILA and the Bankruptcy Code.

However, the Debtor claims that it would be impossible for her to pay the entire repayment obligation in the time remaining for the Debtor's chapter 13 plan.[5] Recognizing that courts have dis-

---

4. Further, I take note of footnote 22 in Judge Sigmund's decision in *Williams* that one might argue that the only remedy available to a borrower when a lender fails to fulfill its duties under 15 U.S.C. § 1635(b) is statutory damages under § 1640(a). *See Williams*, 291 B.R. at 655, n. 22 (citing cases).

5. One problem here is that resolution of this vigorously litigated adversary proceeding has taken an extended period of time, leaving the Debtor with little opportunity to fully repay her obligation within the maximum five years permitted by Bankruptcy Code § 1322(d). The Court has tolerated delay of confirmation pending the outcome of this adversary. I

have reached the conclusion (in part, due to the circumstances of this case) that, except in extraordinary circumstances, confirmation should not be subject to extended delays, pending resolution of such adversary proceedings. *See Wile v. Household Bank, F.S.B. (In re Wile)*, 304 B.R. 198 (Bankr.E.D.Pa.2004) *recon. denied by* 310 B.R. 514 (Bankr.E.D.Pa. 2004), relying upon *In re Fricker*, 116 B.R. 431, 439 (Bankr.E.D.Pa.1990):

> *Fricker* articulates the appropriate balance to strike when a disputed claim unnecessarily delays confirmation. Confirmation should proceed and the Debtor should be required to establish that there is a likelihood that its failure to treat the filed se-

cretion to modify the procedures of 12 C.F.R. § 226.23(d)(3), I conclude that, under these circumstances, the Debtor should have a reasonable time for repayment, even if such period exceeds the five-year period imposed by 11 U.S.C. § 1322(d). The Debtor has not suggested specific repayment terms. Therefore, I will schedule another hearing to allow the Debtor and Parkway time to discuss reasonable repayment terms. If the parties cannot agree upon the amount of the Debtor's repayment obligation and a reasonable repayment schedule, it is the Court's intention to fix the amount and repayment schedule at the hearing set by the Order which follows.

### ORDER

**AND NOW,** this 9th day of September, 2004, upon consideration of the Plaintiffs' Motion For Reconsideration of Certain Portions Of This Court's Memorandum Opinion and Order of April 14, 2004 (the "Motion For Reconsideration"), and the opposition thereto, and for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED** and **DE-CREED** that:

1. the Motion for Reconsideration is granted, in part, and denied, in part;

2. the Debtor is entitled to additional statutory damages in the amount of $200 to offset the Debtor's repayment obligation to Parkway; and

it is further **ORDERED** that a hearing will be held on **October 27, 2004 at 2:00 p.m.** in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia, Pennsylvania to determine: (i) the amount of the Debtor's repayment obligation to Parkway; (ii) the terms of

cured claims as required by § 1325(a)(5) will be upheld.

her repayment obligation to Parkway; and (iii) the amount of reasonable attorney fees and costs to be awarded to the Plaintiff pursuant to 15 U.S.C. § 1640(a)(3). Any supplement to Debtor's counsel's request for attorney fees and costs must be filed and served on or before **October 13, 2004,** with a courtesy copy delivered to chambers. Any response(s) thereto must be filed and served on or before **October 20, 2004,** with a courtesy copy delivered to chambers.